# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOHN E. FALOBA, et al.,** | **Case No. 4:24-cv-01569 (lead case)** |
| | **Case No. 4:24-cv-01574** |
| **Plaintiffs,** | **Case No. 4:24-cv-01577** |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **ULTIUM CELLS LLC, et al.,** | |
| | **MEMORANDUM OPINION AND** |
| **Defendants.** | **ORDER** |

Currently pending before this Court are five Motions to Dismiss filed in three consolidated cases.  Plaintiffs[1] John E. Faloba ("Faloba"), Grant R. Howdershelt ("Howdershelt"), and James L. Antos ("Antos") each filed separate Complaints against Defendant Ultium Cells LLC ("Ultium Cells"), Defendant General Motors Company ("GM"), and Defendant LG Energy Solution Michigan, Inc. ("LGES").  ("Faloba Complaint")[2] (Case No. 4:24-cv-01569, Doc. No. 9); ("Howdershelt Complaint") (Case No. 4:24-cv-01574, Doc. No. 1-1); ("Antos Complaint") (Case No. 4:24-cv-01577, Doc. No. 1-1).  The Howdershelt Complaint and Antos Complaint also asserted claims against Defendant Lake Erie Electric, Inc. ("LEE").  (Howdershelt Complaint at PageID #12; Antos Complaint at PageID #12.)

---

[1] Specifically, the Faloba Complaint was filed by eleven similarly situated plaintiffs.  (Faloba Complaint at PageID #58.) The Howdershelt Complaint was filed by Howdershelt and his wife, Devonna R. Howdershelt.  (Howdershelt Complaint at PageID #12.)  Antos is the sole plaintiff in the Antos Complaint.  (Antos Complaint at PageID #12.)  All three Complaints were originally filed in state court but were removed to federal court on September 13, 2024.  (Case No. 4:24-cv-01569, Doc. No. 1); (Case No. 4:24-cv-01574, Doc. No. 1); (Case No. 4:24-cv-01577, Doc. No. 1).

[2] On September 13, 2024, Faloba's initial Complaint was removed to this Court.  (Case No. 4:24-cv-01569, Doc. No. 1.) On October 10, 2024, Faloba filed an Amended Complaint, which is referred to herein as the "Faloba Complaint."  (Case No. 4:24-cv-01569, Doc. No. 9.)

Defendants GM and LGES jointly filed Motions to Dismiss each of the three Complaints. ("GM/LGES Faloba Motion") (Case No. 4:24-cv-01569, Doc. No. 13); ("GM/LGES Howdershelt Motion") (Case No. 4:24-cv-01574, Doc. No. 7); ("GM/LGES Antos Motion") (Case No. 4:24-cv-01577, Doc. No. 7).   The Faloba Plaintiffs, Howdershelt Plaintiffs, and Plaintiff Antos filed Opposition Briefs to each respective Motion.  ("Faloba Opposition to GM/LGES") (Case No. 4:24-cv-01569, Doc. No. 19); ("Howdershelt Opposition to GM/LGES") (Case No. 4:24-cv-01574, Doc. No. 13); ("Antos Opposition to GM/LGES") (Case No. 4:24-cv-01577, Doc. No. 16).  Defendants GM and LGES filed Reply Briefs to each Opposition.  ("GM/LGES Faloba Reply") (Case No. 4:24-cv-01569, Doc. No. 21); ("GM/LGES Howdershelt Reply") (Case No. 4:24-cv-01569, Doc. No. 17); ("GM/LGES Antos Reply") (Case No. 4:24-cv-01569, Doc. No. 16).  Accordingly, all three Motions are ripe for decision.

Additionally, Defendant LEE filed Motions to Dismiss the Howdershelt Complaint and the Antos Complaint.  ("LEE Howdershelt Motion") (Case No. 4:24-cv-01574, Doc. No. 11); ("LEE Antos Motion") (Case No. 4:24-cv-01577, Doc. No. 14).  Plaintiffs Howdershelt and Antos filed Opposition Briefs as to each respective Complaint.  ("Howdershelt Opposition to LEE") (Case No. 4:24-cv-01574, Doc. No. 15); ("Antos Opposition to LEE") (Case No. 4:24-cv-01577, Doc. No. 18).  Defendant LEE filed Reply Briefs to each Opposition.  ("LEE Howdershelt Reply") (Case No. 4:24-cv-01569, Doc. No. 20); ("LEE Antos Reply") (Case No. 4:24-cv-01577, Doc. No. 19).  Accordingly, these two Motions are also ripe for decision.

This Opinion addresses the four Motions to Dismiss filed in the Howdershelt and Antos cases. The GM/LGES Faloba Motion is addressed in a separately issued opinion.[3] The term "Plaintiffs" in this Opinion thus refers to the Howdershelt and Antos Plaintiffs.

For the reasons set forth herein, the Court DENIES the GM/LGES Howdershelt Motion and GM/LGES Antos Motion. The Court GRANTS the LEE Howdershelt Motion and LEE Antos Motion.

## I.  Background[4]

The Howdershelt Complaint and Antos Complaint set forth the following allegations.[5]

Ultium Cells is a Delaware limited liability company. (Howdershelt Compl. at ¶ 3; Antos Compl. at ¶ 2.) GM is a Delaware corporation. (Howdershelt Compl. at ¶ 4; Antos Compl. at ¶ 3.) LGES is a foreign registered corporation. (Howdershelt Compl. at ¶ 5; Antos Compl. at ¶ 4.) LEE is an Ohio corporation. (Howdershelt Compl. at ¶ 6; Antos Compl. at ¶ 5.) According to Plaintiffs, at all times relevant to this matter, Ultium Cells, GM, LGES, and LEE transacted business in Trumbull County, Ohio and acted through their "agents, servants, employees, contractors, affiliated

---

[3] Plaintiffs in the Howdershelt case and Antos case filed virtually identical Complaints, except that the Howdershelt Complaint asserts an additional claim against LEE for loss of consortium. Conversely, Plaintiffs in the Faloba case filed a Complaint containing similar allegations and claims but use different language to set forth these claims. Because the Court is required to evaluate the exact language of the Complaint on a motion to dismiss, the Court addresses the Howdershelt and Antos Complaints in this Opinion and addresses the Faloba Complaint in a separate opinion.

[4] In setting forth the background, the Court utilizes the language from the Howdershelt and Antos Complaints. *See supra* note 3. The Court addresses the allegations contained in the Faloba Complaint, and the Motion associated therewith, in a separately issued opinion. *See id.*

[5] For purposes of this Opinion, in setting forth the background relevant to Defendants' Motions to Dismiss, the Court accepts Plaintiffs' allegations as true and construes their Complaints in the light most favorable to them as the non-moving parties. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

3

subsidiaries and/or entities and thus [are] vicariously liable for their actions."  (Howdershelt Compl. at ¶¶ 3–6; Antos Compl. at ¶¶ 2–5.)

Plaintiffs allege that at all times relevant to this matter, Ultium Cells "is a joint venture owned and controlled by GM and LG[ES]."  (Howdershelt Compl. at ¶ 7; Antos Compl. at ¶ 6.)  At all times relevant to this matter, Howdershelt and Antos were employed by LEE while working on a project at the Ultium Cell battery plant (hereinafter the "premises").  (Howdershelt Compl. at ¶ 10; Antos Compl. at ¶ 9.)  The premises were owned by Ultium Cells and were "jointly … controlled and managed by GM and Ultium [Cells]."[6]  (Howdershelt Compl. at ¶ 11; Antos Compl. at ¶ 10.)

While Howdershelt and Antos were "working on the premises, operations commenced as part of the plant's processes, including the use of anode and cathode coating ovens in which chemical

---

[6] In their Complaints, Plaintiffs allege that "[t]he premises were jointly owned, controlled and managed by GM and Ultium."  (Howdershelt Compl. at ¶ 11; Antos Compl. at ¶ 10.)  However, GM and LGES, in their Motions, submit that "[p]ublic records clearly establish that Ultium Cells is the property owner" and requests that this Court take judicial notice of that fact.  (GM/LGES Howdershelt Motion at PageID #58–59; GM/LGES Antos Motion at PageID #58.)  In support of this contention, GM and LGES attach to their Motions a copy of the Trumbull County, Ohio Auditor's website for the premises.  (GM/LGES Howdershelt Motion at PageID #62–64; GM/LGES Antos Motion at PageID #62–64.)  Plaintiffs do not address this in their Oppositions.  "[I]t is well settled that federal courts may consider matters that are of public record or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) motion to a Rule 56 motion."  *Huff v. FirstEnergy Corp.*, 972 F. Supp.2d 1018, 1028–29 (N.D. Ohio 2013) (citing cases).  This includes publicly available property records.  *See, e.g.*, *Heathcott & Associates, LLC v. Russell*, 2024 WL 4573829, at *3 (M.D. Tenn. Oct. 24, 2024) ("And the property records maintained by the Williamson County Register of Deeds would qualify as public records."); *Perkins v. Lakeview Loan Servicing, LLC*, 2024 WL 100168, at *2 (E.D. Mich. Jan. 9, 2024) (similar); *Cotton v. City of Cincinnati*, 2013 WL 1438030, at *2 (S.D. Ohio Apr. 9, 2013) ("[T]he Court again takes judicial notice of the public records pertaining to the condemned property.").  Having verified the public records presented by GM and LGES, the Court takes judicial notice of the fact that the premises at issue in this matter were owned solely by Ultium Cells, and not by GM.

In addition to alleging ownership, Plaintiffs have also alleged that the premises were "jointly … controlled and managed by GM and Ultium [Cells]."  (Howdershelt Compl. at ¶ 11; Antos Compl. at ¶ 10.)  The Court's judicial notice as to the *ownership* of the premises does not conflict with Plaintiffs' allegations that GM jointly *controlled* and *managed* the premises with Ultium Cells.  In other words, it is plausible that although Ultium Cells was ultimately the owner of the property, as indicated by public records, Ultium Cells still permitted other parties to "control" and "manage" the ongoing operations taking place at the premises.  Accordingly, the Court declines to disregard Plaintiffs' allegations regarding control and management of the premises based on the public records presented by GM and LGES, and instead accepts those allegations as true for purposes of this Opinion.  *See Gunasekera*, 551 F.3d at 466.

slurry is baked onto a foil substrate."  (Howdershelt Compl. at ¶ 12; Antos Compl. at ¶ 11.) "Following service to the ovens by Ultium, GM and/or LG[ES], the coating ovens were not closed prior to being restarted."  (Howdershelt Compl. at ¶ 13; Antos Compl. at ¶ 12.)  According to Plaintiffs, Ultium Cells, GM, and LGES "failed to operate the coating ovens with care, failed to develop, document and implement procedures for control of hazardous chemicals, failed to train [their] agents, employees, contractors and/or servants and implement appropriate safety procedures, failed to provide appropriate safety measures and equipment including proper ventilation and control interlocks, [and] failed to inspect and warn of latent hazards."  (Howdershelt Compl. at ¶¶ 24, 31, 38; Antos Compl. at ¶¶ 22, 29, 36.)

"As a result [of the service to the ovens], chemically laced toxic fumes escaped and entered into the air ducts of the premises."  (Howdershelt Compl. at ¶ 14; Antos Compl. at ¶ 13.)  "The toxic fumes inundated the area of the premises where [Howdershelt and Antos were] working, causing [Howdershelt and Antos] to be exposed to and inhale them."  (Howdershelt Compl. at ¶ 15; Antos Compl. at ¶ 14.)  "On the day of the exposure, the premises was evacuated."  (Howdershelt Compl. at ¶ 16; Antos Compl. at ¶ 15.)

"The following day, Defendants represented to [Howdershelt and Antos] that the premises was safe."  (Howdershelt Compl. at ¶ 17; Antos Compl. at ¶ 16.)  According to Plaintiffs, LEE allowed Howdershelt and Antos "to enter back into the Ultium battery plant, without understanding the full identity and nature of the chemical exposure that the Plaintiffs were exposed to …" (Howdershelt Compl. at ¶ 42; Antos Compl. at ¶ 40.)  "When [Howdershelt and Antos] returned to

the premises,[7] [they] experienced additional symptoms." (Howdershelt Compl. at ¶ 17; Antos Compl. at ¶ 16.)  Following the incident, Howdershelt and Antos allege that they were "required to seek medical care, suffered great pain of mind and body, incurred financial obligations, including economic loss, lost wages, as well as other injury, damage and loss, all of which will continue into the future." (Howdershelt Compl. at ¶¶ 25, 32, 39; Antos Compl. at ¶¶ 23, 30, 37.)

## II.    Procedural History

On August 6, 2024, Faloba filed a Complaint in state court against Defendants Ultium Cells, GM, and LGES.  (Case No. 4:24-cv-01569, Doc. No. 1-1.)  On August 15, 2024, Plaintiffs Howdershelt and Antos filed their Complaints in state court against Defendants Ultium Cells, GM, LGES, and LEE.  (Howdershelt Compl.; Antos Compl.)  On September 13, 2024, Defendants removed all three Complaints to this Court.  (Case No. 4:24-cv-01569, Doc. No. 1; Case No. 4:24-cv-01574, Doc. No. 1; Case No. 4:24-cv-01577, Doc. No. 1.)

---

[7] In their Reply, GM and LGES assert that the allegation in the Antos Complaint that Antos "returned" to the premises is contradicted by Antos's previous written statement to the Ohio Bureau of Workers' Compensation. (GM/LGES Antos Reply at PageID #165.)  This written statement was previously attached as an exhibit to Defendants Ultium Cells, GM, and LGES's Memorandum in Opposition to Plaintiff's Motion to Remand.  (Case No. 24-cv-01577, Doc. No. 9-1.) Therein, Antos indicated that she "never went back to work in the area" following the initial incident, and that she "ha[s] not been released to go back to work due to the incident."  (*Id.* at PageID #94, ¶ 7.)  It is well-settled that "[w]hen a written instrument contradicts allegations in the complaint *to which it is attached*, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 Fed. App'x. 532, 536 (6th Cir. 2012) (emphasis added); *Cates v. Crystal Tech., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (emphasis added).  In this matter, however, Antos's written statement was not attached to her Complaint.  (*See* Antos Complaint.)  In-fact, Antos did not attach this statement to any of her pleadings.  Nor have Defendants attached this written statement to their Motions or Replies.  Rather, this document was solely included as part of Defendants Ultium Cells, GM, and LGES's Opposition to Plaintiff's Motion to Remand.  Thus, this situation does not implicate the well-settled rule that attachments to a Complaint may be evaluated on a motion to dismiss—rather, any evaluation of the written statement being contradictory to Antos's allegations would effectively transform the Motions at-issue into motions for summary judgment.  The Court declines to do so here.  Defendants will have the opportunity to address Antos's purported inconsistencies in discovery and present evidence at the summary judgment stage to that effect. At this stage, however, the Court accepts Plaintiffs' factual allegations as true and construes their Complaints in the light most favorable to them as the non-moving parties.  *See Gunasekera*, 551 F.3d at 466.

On September 20, 2024, Ultium Cells filed an Answer to the Howdershelt and Antos Complaints.[8]  (Case No. 4:24-cv-01574, Doc. No. 6; Case No. 4:24-cv-01577, Doc. No. 6.)  That same day, GM and LGES filed their Motions to Dismiss the Howdershelt and Antos Complaints.[9]  (GM/LGES Howdershelt Motion; GM/LGES Antos Motion.)  On September 27, 2024, Antos filed a Motion to Remand to State Court.  (Case No. 4:24-cv-01577, Doc. No. 8.)  On October 10, 2024, Faloba filed an Amended Complaint.  (Faloba Compl.)  On October 18, 2024, Antos's Motion to Remand was denied.  (Case No. 4:24-cv-01577, Doc. No. 10.)  On October 24, 2024, Ultium Cells filed its Answer to the Faloba Complaint.  (Case No. 4:24-cv-01569, Doc. No. 12.)  That same day, GM and LGES filed their Motion to Dismiss the Faloba Complaint.  (GM/LGES Faloba Motion.)

On November 5, 2024, following a Motion to Consolidate filed by GM and LGES, all three cases were consolidated before this Court.  (Case No. 4:24-cv-01569, Doc. No. 15.)

On November 4, 2024, both Howdershelt and Antos filed their Oppositions to GM/LGES's Motions to Dismiss.  (Howdershelt Opposition to GM/LGES; Antos Opposition to GM/LGES.)  On November 18, 2024, GM and LGES filed their Replies to Howdershelt and Antos's Oppositions.  (GM/LGES Howdershelt Reply; GM/LGES Antos Reply.)  On November 19, 2024, Faloba filed his Opposition to GM/LGES's Motion to Dismiss.  (Faloba Opposition to GM/LGES.)  On December 9, 2024, GM and LGES filed their Reply to Faloba's Opposition.  (GM/LGES Faloba Reply.)

---

[8] Ultium Cells also filed an Answer to the initial Faloba complaint on this date.  However, Faloba amended his Complaint shortly afterwards.  On October 24, 2024, Ultium Cells filed its Answer to Faloba's Amended Complaint.  (Case No. 4:24-cv-01569, Doc. No. 12.)

[9] GM and LGES also filed a Motion to Dismiss the initial Faloba complaint on this date.  However, Faloba amended his Complaint shortly afterwards.  On October 24, 2024, GM and LGES filed a Motion to Dismiss Faloba's Amended Complaint.  (GM/LGES Faloba Motion.)

On October 22, 2024, LEE also filed separate Motions to Dismiss the claims asserted against it in the Howdershelt and Antos Complaints.  (LEE Howdershelt Motion; LEE Antos Motion.)  On November 5, 2024, Antos filed his Opposition to LEE's Motion.  (Antos Opposition to LEE.)  On November 12, 2024, LEE filed its Reply to Antos's Opposition.  (LEE Antos Reply.)  On November 21, 2024, Howdershelt filed his Opposition to LEE's Motion.  (Howdershelt Opposition to LEE.)  On December 2, 2024, LEE filed its Reply to Howdershelt's Opposition.  (LEE Howdershelt Reply.)

The Howdershelt and Antos Complaints include, in relevant part, claims of negligence and recklessness against GM and LGES and a claim for employment intentional tort against LEE.  (Howdershelt Compl. at ¶¶ 27–47; Antos Compl. at ¶¶ 25–45.)  Plaintiff Devonna R. Howdershelt also asserts, in relevant part, claims for loss of consortium against all Defendants.  (Howdershelt Compl. at ¶¶ 55–56.)  Each claim will be discussed below.

## III.    Standard of Review

Defendants GM, LGES, and LEE move to dismiss Plaintiffs' claims as asserted against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pursuant to Rule 12(b)(6), the Court accepts Plaintiffs' factual allegations as true and construes the Complaints in the light most favorable to Plaintiffs.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts

to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, … it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.   Analysis

### A.   Negligence/Recklessness Claims against GM and LGES

The Court first turns to Plaintiffs' negligence and recklessness claims against GM and LGES.

#### 1.   Arguments of the Parties

In their Motions, GM and LGES submit that "nowhere in Plaintiffs' factual allegations do they allege what specific conduct LGES or GM engaged in, beyond being mere members of the LLC, Ultium Cells Holdings LLC, which is the sole member of Ultium Cells LLC, which operates the

9

Facility." (GM/LGES Howdershelt Motion at PageID #54; GM/LGES Antos Motion at PageID #54.) GM and LGES then assert that an LLC's "members are not liable for the LLC's debts, obligations, or liabilities merely because of their status as members." (GM/LGES Howdershelt Motion at PageID #56; GM/LGES Antos Motion at PageID #56.) Next, GM and LGES maintain that none of the circumstances for "piercing" the corporate veil applies under the *Belvedere-Dombroski* test, to include Plaintiffs demonstrating that the entities are "fundamentally indistinguishable" under the alter-ego doctrine or that GM or LGES are "involved in day-to-day decision making or operations at the Facility." (GM/LGES Howdershelt Motion at PageID #56–57, 59; GM/LGES Antos Motion at PageID #56–58.) Finally, GM and LGES assert that "Plaintiffs allege generally that Ultium Cells, GM, and LGES were negligent and/or reckless in operating the Facility," but "do not specify what conduct on the part of any individual Defendant was negligent or reckless," and that such "collective" references fail to meet the pleading requirements of Rule 8. (GM/LGES Howdershelt Motion at PageID #55, 58; GM/LGES Antos Motion at PageID #54–55, 57–58.)

In their Oppositions, Plaintiffs argue that "[p]ursuant to the personal participation theory, a plaintiff need not pierce the corporate veil to hold individuals personally liable for their tortious acts." (Howdershelt Opposition to GM/LGES at PageID #136; Antos Opposition to GM/LGES at PageID #174.) Plaintiffs assert that their "claims against LG[ES] and GM are not merely based on their status as members of the sole member of Defendant Ultium Cells," but rather because GM and LGES, "by and through their agents, employees, servants and/or contractors engaged in separate tortious conduct and caused harm to Plaintiffs." (Howdershelt Opposition to GM/LGES at PageID #136–37; Antos Opposition to GM/LGES at PageID #174–75.) Finally, Plaintiffs contend that they have met the pleading requirements of Rule 8, pointing to the same allegations made in their Complaints that GM

10

and LGES describe as "collectively" pled. (Howdershelt Opposition to GM/LGES at PageID #137–38; Antos Opposition to GM/LGES at PageID #175–76.)

In their Reply, GM and LGES reiterate that an LLC's members are not liable for the LLC's debts, obligations, or liabilities merely because of their status as members. (GM/LGES Howdershelt Reply at PageID #168; GM/LGES Antos Reply at PageID #160.) Further, GM and LGES maintain that Plaintiffs "plead no facts to impose liability on LGES or GM individually." (GM/LGES Howdershelt Reply at PageID #168; GM/LGES Antos Reply at PageID #160.) Specifically, GM and LGES assert that the "personal participation" theory does not "extend[] to corporate parent entities," but instead applies to "individual persons committing distinguishable tortious conduct while serving as members, officers, or directors of a limited liability company." (GM/LGES Howdershelt Reply at PageID #169; GM/LGES Antos Reply at PageID #161.) GM and LGES contend that Plaintiffs have failed to satisfy Rule 8 pleading requirements based on "plead[ing] collective conduct on the part of all Defendants" and the "fail[ure] to make any allegations that GM or LGES directly influenced, participated in, or directed the alleged tortious conduct." (GM/LGES Howdershelt Reply at PageID #170–71; GM/LGES Antos Reply at PageID #162–63.) According to GM and LGES, "vaguely lumping all defendants together without providing any factual allegations that specify separate acts" is insufficient to state a claim under Rule 8. (GM/LGES Howdershelt Reply at PageID #172–73; GM/LGES Antos Reply at PageID #163–64.)

## 2. Piercing the Corporate Veil and Personal Participation Theory

The Court first addresses the parties' disputes regarding piercing the corporate veil and whether the personal participation theory can apply to GM and LGES.

Generally, under Ohio law, "[a] person who is a member of a limited liability company is not liable, solely by reason of being a member, for a debt, obligation, or liability of the limited liability company or a series thereof …" Ohio Rev. Code § 1706.26; *see also Ettayam v. Ramsey*, 2019 WL 952037, at *6 (10th Dist. 2019). However, "[a] trial court may apply the doctrine of piercing the corporate veil to limited liability companies" to hold a "member of a limited liability company … personally liable." *Denny v. Breawick, LLC*, 137 N.E.3d 578, 584 (3d Dist. 2019).

In this matter, however, Plaintiffs do not seek to hold GM and LGES liable "solely by reason of being a member" of Ultium Cells and its subsidiary. § 1706.26. Nor do Plaintiffs seek to pierce the corporate veil. (*See* Howdershelt Opposition to GM/LGES at PageID #136–37; Antos Opposition to GM/LGES at PageID #174–75.) Rather, Plaintiffs assert that GM and LGES are liable under the personal participation theory of liability. *See State ex. rel. Cordray v. Evergreen Land Dev., Ltd.*, 2016 WL 5408651, at *4 (7th Dist Sept. 27, 2016) ("The personal participation theory of liability is distinct from piercing the corporate veil …"); *Francisco A. Mateo MD, Inc. v. Proia*, 227 N.E.3d 389, 421 (7th Dist. 2023) (same). According to Plaintiffs, GM and LGES are liable because of their independent conduct, rather than their mere membership status. *See, e.g.*, *Broadcast Music, Inc. v. Leyland Co., LLC*, 2012 WL 5879838, at *2 (N.D. Ohio Nov. 21, 2012) (finding that LLC member's "alleged liability is not predicated solely upon his role as a member/manager of [LLC]" but instead "as an infringer along with [LLC]").

This Court concludes, then, that Plaintiffs do not advance any theory of piercing the corporate veil and have abandoned any arguments to that effect. Indeed, Plaintiffs contend that they "need not

12

pierce the corporate veil to hold individuals personally liable for their tortious acts."[10]  (Howdershelt Opposition to GM/LGES at PageID #136; Antos Opposition to GM/LGES at PageID #174.) Therefore, the Court need not address the parties' arguments pertaining to piercing the corporate veil. *See Cordray*, 2016 WL 5408651, at \*4 (recognizing that piercing the corporate veil is distinct from the personal participation theory of liability).

Plaintiffs only argue that GM and LGES are liable under the personal participation theory of liability.  (Howdershelt Opposition to GM/LGES at PageID #136; Antos Opposition to GM/LGES at PageID #174.)  In response, GM and LGES contend that the personal participation theory of liability only applies when the LLC member is an individual.  (GM/LGES Howdershelt Reply at PageID #169–70; GM/LGES Antos Reply at PageID #161–62.)  Accordingly, the first issue the Court must determine is whether the personal participation theory applies to GM and LGES—i.e., whether the personal participation theory is applicable when the LLC member is also a corporate entity.

As previously explained, § 1706.26 provides, in relevant part, that "[a] person who is a member of a limited liability company is not liable, *solely by reason of being a member*, for a debt, obligation, or liability of the limited liability company or a series thereof, whether arising in contract, tort, or otherwise; or for the acts or omissions of any other member, agent, or employee of the limited liability company or a series thereof."  § 1706.26 (emphasis added).

---

[10] In their Replies, GM and LGES submit that Plaintiffs do not address the arguments in their Motion, "which alone is sufficient to justify dismissal."  (GM/LGES Howdershelt Reply at PageID #169; GM/LGES Antos Reply at PageID #161.)  However, the arguments in GM and LGES's Motions address piercing the corporate veil, and Plaintiffs in their Opposition expressly note that they are not proceeding under a theory of piercing the corporate veil, but instead advance the personal participation theory.  (Howdershelt Opposition to GM/LGES at PageID #136; Antos Opposition to GM/LGES at PageID #174.)  Accordingly, the Court declines to find that dismissal is warranted simply because Plaintiffs failed to address GM/LGES's arguments relating to a theory of liability that Plaintiffs themselves do not even advance in their Complaint.

While Ohio courts do not seem to have directly addressed the issue of whether the personal participation theory is applicable when the LLC member is also a corporate entity, one federal district court analyzing a Kentucky statute[11] similar to § 1706.26 has applied the personal participation theory to LLCs. *See Dzurilla v. All American Homes, LLC*, 2010 WL 55923 (E.D. Ky. Jan. 4, 2010). In *Dzurilla*, claims were asserted against two limited liability companies: AAH and AAH-TN. *Id.* at *1. AAH-TN was a wholly owned limited liability company of AAH. *Id.* The defendants argued that they were "separate LLCs and that the elements of piercing the corporate veil have not been satisfied." *Id.* In response, the plaintiffs contended that it was "not necessary to pierce the corporate veil to hold AAH liable" because "AAH committed individual tortious conduct by allowing AAH-TN to manufacture modules under AAH's KIBS number without ensuring that the modules complied with the Building Code." *Id.* at *2.

The court concluded that a genuine issue of fact existed based on the personal participation theory. First, the court explained that defendants' "arguments regarding piercing the corporate veil ha[d] no relevance [because] [p]laintiffs did not allege that the corporate veil should be pierced." *Id.* at *3. Rather, the court concluded that a "member of an LLC can be held liable for its individual conduct, without regard to the limited liability status of the corporation or company." The court acknowledged that "[w]hile mere status as a manager of an LLC will not subject a person to liability, the statute does not preclude liability for the manager's own tortious conduct." *Id.* (citing Ky. Rev. Stat. Ann. § 275.150). Accordingly, given that plaintiffs asserted that "AAH committed individual

---

[11] Ky. Rev. Stat. Ann. § 275.150 is similar to the Ohio statute applicable to this case in that it provides, in relevant part, that "no member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company …" Ky. Rev. Stat. Ann. § 275.150.

14

tortious conduct," the court concluded that both AAH and AAH-TN could be separately liable because a genuine issue of material fact existed "as to whether AAH is liable to [p]laintiffs for its *individual acts* or its acts as an agent." *Id.* (emphasis added).

The Court finds *Dzurilla* to be persuasive. First, the focus of the Ohio statute is that a member of a limited liability company should not be liable "*solely by reason of being a member*." § 1706.26 (emphasis added). Second, Ohio courts routinely permit liability when an LLC member's individual conduct constitutes tortious activity,[12] and nothing in the statute indicates that this well-established rule draws a distinction between that member being an individual as opposed to an LLC. Just as in *Dzurilla*, Plaintiffs allege that GM and LGES committed separate and individual tortious conduct from Ultium Cells. (Howdershelt Opposition to GM/LGES at PageID #137; Antos Opposition to GM/LGES at PageID #175.) If proven true that "GM and LGES, by and through their agents, employees, servants and/or contractors engaged in separate tortious conduct," such conduct could support independent liability separate from the conduct of Ultium Cells. (*Id.*)

Accordingly, following *Dzurilla*, this Court declines to find that Ultium Cells, GM, and LGES cannot each be liable for their own independent conduct simply because GM and LGES are LLC members rather than individual members.

### 3. Whether Plaintiffs Adequately Pled the Personal Participation Theory

The Court next turns to whether Plaintiffs have adequately pled the personal participation theory of liability as to GM and LGES. Specifically, GM and LGES assert that Plaintiffs have not met the pleading requirements under *Twombly* and *Iqbal* for two reasons: (1) Plaintiffs' allegations

---

[12] *See, e.g.*, *Cordray*, 2016 WL 5408651, at *6–7 (referencing participation of individual LLC members in tortious conduct and upholding their personal liability "on the basis of personal participation").

15

"fail[] to specify the harms allegedly caused by each of the [i]ndividual Defendants" by only pleading "collective conduct"; and (2) Plaintiffs' allegations of GM and LGES's breach of duties are a conclusory "formulaic recitation of the elements." (GM/LGES Howdershelt Reply at PageID #170–74; GM/LGES Antos Reply at PageID #162–66.) The Court will evaluate each argument below.

### a. Whether Pleading "Collective Conduct" is Proper Under Rule 8

The Court first turns to GM and LGES's argument that pleading "collective conduct" is impermissible under Rule 8. As explained previously, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett*, 561 F.3d at 488 (quoting *Twombly*, 550 U.S. at 555–56). Moreover, "the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. at 93) (internal quotation marks omitted).

The issue of "[w]hether 'group pleading' of defendants violates Rule 8(a) is often dependent on the facts and claims at issue." *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp.3d 929, 935 (S.D. Ohio 2023) (citing cases). A complaint violates the pleading requirements of Rule 8 when it fails to specify the harms allegedly caused by each individual defendant. *See Niederst v. Minuteman Capital, LLC*, 2024 WL 3522413, at *5 (N.D. Ohio July 24, 2024). Courts have found complaints that contain "conclusory allegations of collective, unspecified, and undifferentiated wrongdoing" and that "vaguely lump[] all defendants together without providing any factual allegations that specify separate acts" to fall short of Rule 8 pleading requirements. *Kurek v. Ohio Dep't of Dev. Disabilities*, 2017 WL 1555930, at *6 (N.D. Ohio Jan. 20, 2017); *see also Niederst*, 2024 WL 3522413, at *5.

16

However, "[p]ursuant to Rule 8, the Sixth Circuit permits plaintiffs to group defendants together in the allegations in their complaint so long as it gives the defendants notice of the claims against them and the grounds upon which it rests." *Shah v. Fortive Corp.*, 2024 WL 3226108, at *5 (S.D. Ohio June 27, 2024). Indeed, district courts within this circuit have concluded that "a group pleading may state a claim against … collectively defined defendants where plaintiff plausibly alleges facts showing entitlement to relief for the claimed misconduct." *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp.3d 826, 835 (N.D. Ohio 2021); *see also Hale v. Enerco Grp., Inc.*, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011) (denying motion to dismiss where plaintiffs plausibly alleged defendants engaged in the same conduct); *Freedom Banc Mortg. Services, Inc. v. O'Harra*, 2012 WL 3862209, at *4 (S.D. Ohio Sept. 5, 2012) (finding that blanket allegations against "Defendants" throughout complaint were sufficient under Rule 8 because it was plausible that multiple defendants engaged in, or assisted in, the alleged misconduct).

Thus, where "[p]laintiffs have made allegations that multiple [d]efendants have engaged in the same conduct, those allegations are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims." *Hale*, 2011 WL 49545, at *4; *Shah*, 2024 WL 3226108, at *5 n.6; *Freedom Banc Mortg. Services, Inc.*, 2012 WL 3862209, at *4. Accordingly, "collecting [defendants] under a defined term then claiming all [defendants] are liable for the same misconduct is, at the pleading stage, sufficient to give each of them notice of the claims alleged against them." *Gold Crest, LLC*, 525 F. Supp.3d at 835; *see also Shah*, 2024 WL 3226108, at *5 ("At the pleadings stage, the practice is sufficient where discovery will help expose who will have any actual responsibility.").

The Court finds that Plaintiffs' collective pleading style is not fatal to their Complaint.  In this matter, Plaintiffs allege that multiple Defendants participated in the same tortious conduct.  For example, Plaintiffs allege that the premises were jointly "controlled and managed by GM and Ultium."  (Howdershelt Compl. at ¶ 11; Antos Compl. at ¶ 10.)  While under such control and management, "service to the ovens by Ultium, GM and/or LG[ES]" was conducted by their "agents, employees, servants, [or] contractors."[13]  (Howdershelt Compl. at ¶¶ 3–5, 13; Antos Compl. at ¶¶ 3–5, 12.)  The Court construes these allegations as Plaintiffs plausibly alleging that each of the Defendants were involved in the service to the ovens—particularly considering the allegations of joint control and management of the premises.

Similarly, Plaintiffs allege that "[t]he following day [after the incident], Defendants represented to [Plaintiffs] that the premises was safe."  (Howdershelt Compl. at ¶ 17; Antos Compl. at ¶ 16.)  Considering that the phrase "Defendants" includes Ultium Cells, GM, and LGES, who allegedly controlled and managed the premises and were involved in servicing the ovens as previously discussed, as well as LEE, who was Plaintiffs' employer, the Court construes these allegations as Plaintiffs plausibly alleging that each of these Defendants represented to Plaintiffs that the premises was safe.  The same holds true for Plaintiffs' identical allegations regarding Ultium Cells, GM, and LGES's alleged duties owed, and alleged breaches thereof, in that Plaintiffs plausibly allege separate liability based on each individual defendant's role in controlling and managing the premises and serving the ovens.  (Howdershelt Compl. at ¶¶ 20–40; Antos Compl. at ¶¶ 18–38.)

---

[13] When evaluating a motion to dismiss, "a federal court may consider an entire complaint to determine whether a plaintiff pleaded plausible claims."  *DG Gas, LLC, et al. v. TA Franchise Systems LLC, et al.*, 2025 WL 814928, at *44 (N.D. Ohio Mar. 14, 2025) (citing *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 895 n.3 (6th Cir. 2019)).

"[D]iscovery will help expose who will have any actual responsibility" by allowing Plaintiffs the chance to "reveal evidence to support" their claims and Defendants the chance to refute that evidence.  *Shah*, 2024 WL 3226108, at *5; *Hale*, 2011 WL 49545, at *4.  But at this stage, the Court concludes that "Defendants have adequate notice of Plaintiffs' claims and the grounds upon which they rest" based on Plaintiffs' "allegations that multiple Defendants have engaged in the same conduct."[14]  *Hale*, 2011 WL 49545, at *4.  Accordingly, Plaintiffs' claims "are not subject to dismissal as an improper group pleading."  *Gold Crest, LLC*, 525 F. Supp.3d at 835.

### b.  Whether Plaintiffs' Allegations are Conclusory Under Rule 8

Next, the Court turns to GM and LGES's assertions that Plaintiffs' allegations are conclusory under Rule 8.  Specifically, GM and LGES advance two arguments.  First, GM and LGES assert that the Complaints "fail to set forth that LGES or GM specifically directed or influenced the tortious conduct beyond merely being corporate owners of Ultium Cells."  (GM/LGES Howdershelt Reply at

---

[14] GM and LGES cite to other cases in which "collective" allegations were found to have fallen short of Rule 8 pleading requirements.  However, the Court finds these cases distinguishable for numerous reasons.  First, the Court finds that in the present case, Plaintiffs allege that *each* of the individual Defendants engaged in the same tortious conduct, as opposed to only certain Defendants having engaged in the conduct and the allegations not specifying which Defendants did so.  *Cf. Arnold v. Alphatec Spine, Inc.*, 2014 WL 2896838, at *4 (S.D. Ohio June 26, 2014) (rejecting collective pleading because complaint did "not provide any facts to support the allegation that *all Defendants* colluded in the alleged fraudulent scheme").  Second, having recognized that the permissibility of group pleading is "often dependent on the facts and claims at issue," the Court finds that the present case is distinguishable in that it sufficiently puts the Defendants on notice of the claims being asserted, as explained above, unlike the cases cited by GM and LGES.  *See, e.g.*, *Niederst*, 2024 WL 3522413, at *4–5 (finding that complaint's allegations that defendants "*may* have participated" did not sufficiently allege that any individual defendant personally engaged in tortious conduct and was directly contradicted by exhibits attached to the complaint); *Kurek*, 2017 WL 1555930, at *6 (finding that plaintiff failed to attribute the alleged denial of her fundamental due process rights to any "specific acts" by any particular defendant); *Aaron v. Durrani*, 2014 WL 996471, at *3–4 (S.D. Ohio Mar. 13, 2014) (rejecting broad allegations against "All named Defendants" in 159-page complaint that required the court to "sift through 976 paragraphs of largely irrelevant factual summaries to determine the basis of [p]laintiff's RICO claims" because it was "impossible to identify a single instance where [p]laintiffs make an allegation of a specific action by a specific Defendant that supports their claims").  GM and LGES cite to one other case from outside of this district, *Brockman v. Chevron USA, Inc.*, 2010 WL 11538073 (S.D. Ohio Aug. 11, 2010), that was decided shortly after *Twombly* and *Iqbal*, and notably, prior to the cases relied upon by the Court indicating that collective pleading may be permissible depending on the circumstances of the case.

PageID #171; GM/LGES Antos Reply at PageID #163.) Second, GM and LGES submit that Plaintiffs' allegations regarding the allegedly breached duties owed to Plaintiffs are "nothing more than a recitation of the elements of negligence/recklessness," and that a "pleading that offers 'labels and conclusions'" fails Rule 8 pleading requirements. (*Id.*)

As a preliminary matter, the Court rejects the assertion that Plaintiffs have not set forth that GM or LGES "specifically directed or influenced the tortious conduct beyond merely being corporate owners of Ultium Cells." (*Id.*) The Court has already discussed Plaintiffs' allegations regarding control of the premises, service to the ovens, and the instructions that Howdershelt and Antos could safely return to the premises as they relate to GM and LGES. *See* Section IV.A.3.a. The Court finds that these allegations allege tortious conduct "beyond merely being corporate owners of Ultium Cells" by way of personal participation.[15]

---

[15] GM and LGES cite to case law for the proposition that a "party's influencing the conduct of another … does not constitute tortious conduct in its own right under the personal participation theory, without other allegations of direct involvement." (GM/LGES Howdershelt Reply at PageID #170; GM/LGES Antos Reply at PageID #162.) However, Plaintiffs do not merely allege that GM and LGES "influenced" the conduct of another, and GM and LGES admit that the "Plaintiffs do not expressly plead" this theory. (GM/LGES Howdershelt Reply at PageID #170; GM/LGES Antos Reply at PageID #162.) Rather, as previously discussed, a liberal construction of Plaintiffs' Complaints indicates that Plaintiffs allege that GM and LGES, through their employees and agents, were directly involved in the alleged tortious conduct relating to the control of the premises, service to the ovens, and instructions that the premises was safe for return. *See* Section IV.A.3.a. Accordingly, the Court finds that GM and LGES's arguments regarding "influencing the conduct of another" are not relevant here.

Moreover, GM and LGES's cited authority is wholly distinguishable from the present case. GM and LGES cite to *Mondello v. Power Home Solar, LLC*, 2023 WL 6311463 (N.D. Ohio Sept. 28, 2023), regarding a "party's influencing the conduct of another" under the personal participation theory. (GM/LGES Howdershelt Reply at PageID #170–71; GM/LGES Antos Reply at PageID #162–63.) *Mondello* involved claims against a company for allegedly false marketing, where additional individual liability was sought against the company's founder for allegedly developing the marketing tactics. *Mondello*, 2023 WL 6311463, at *1, 8. However, the court rejected that argument because the allegations did not suggest that the founder interacted with plaintiffs during the sale, or even that the founder directed the employee who made the sale to use the tactics at-issue. *Id.* at *8. Thus, *Mondello* is distinguishable from the present matter, in that Plaintiffs allege that service to the ovens was directly conducted by Ultium Cells, GM, and/or LGES, "through [their] agents, servants, employees, [and] contractors." (Howdershelt Compl. at ¶¶ 3–5, 13; Antos Compl. at ¶¶ 3–5, 12.)

The Court next turns to GM and LGES's arguments regarding recitation of the elements of negligence/recklessness and conclusory allegations. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bechak v. Chang*, 2015 WL 8527416, at *1 (N.D. Ohio Dec. 11, 2015). While "[s]pecific facts are not necessary," a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* Thus, a complaint must contain "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Stuart v. Lowe's Home Centers, LLC*, 737 Fed. App'x 278, 281 (6th Cir. 2018) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

An examination of cases within this circuit helps demonstrate this distinction between complaints that comply with Rule 8 and complaints that do not. *Compare Stuart*, 737 Fed. App'x at 281–82 (finding that allegations in complaint were insufficient to survive motion to dismiss), *with Bechak*, 2015 WL 8527416, at *1–2 (finding that complaint met plausibility requirements of Rule 8).

In *Stuart*, the court evaluated whether a complaint sufficiently alleged gross negligence and intentional infliction of emotional distress. 737 Fed. App'x at 281. Regarding the claim for gross negligence, the complaint merely alleged, without further explanation, that the defendant "demonstrated wanton and extreme reckless conduct with regard to the rights of the Plaintiff and such reckless indifference to his welfare and his reputation constitutes gross negligence." *Id.* Similarly, for the intentional infliction of emotional distress claim, the complaint simply alleged that the "actions of the Defendant were intentional and/or reckless" without specifying anything further. *See id.* ("What conduct? What actions? The complaint does not say."). Thus, the court concluded that

21

dismissal was appropriate because the complaint contained "recitations of the elements of the claims" and "conclusory statements as to why those elements are met." *Id.* at 281–82.

Conversely, in *Bechak*, the court concluded that the plaintiff's complaint satisfied the pleading requirements of Rule 8. 2015 WL 8527416, at *2. There, the court rejected the argument that the plaintiff had set forth only a "formulaic recitation of the elements." *Id.* Instead, the court determined that the plaintiff set forth "specific factual allegations describing [the defendant's] role in the purported mishandling, deterioration, and misidentification of the waste that is alleged to have created the explosive condition of the material." *Id.* In evaluating the motion to dismiss, the court explained that the "cause of the explosion, the role of each defendant, and the extent of each defendant's duty or responsibility concerning the material and the alleged injuries cannot be definitively established at this stage in the matter." *Id.* However, after "consider[ing] the [c]omplaint in a light most favorable to the [p]laintiff," the court concluded that the complaint "contain[ed] 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' and [was] therefore sufficient." *Id.*

The Court finds the present case to be more analogous to *Bechak* and concludes that Plaintiffs have satisfied the plausibility requirements of Rule 8. Like *Bechak*, Plaintiffs allege specific factual allegations regarding their case, including that: (i) "the premises were jointly … controlled and managed by GM and Ultium [Cells]"; (ii) "service to the ovens by Ultium [Cells], GM, and/or LGES" occurred; (iii) following service, "the coating ovens were not closed prior to being restarted"; (iv) "[a]s a result, chemically laced toxic fumes escaped and entered into the air ducts of the premises"; (v) "the toxic fumes inundated the area of the premises were [Plaintiffs were] working, causing [Plaintiffs] to be exposed to and inhale them"; (vi) although "[o]n the day of the exposure, the

22

premises was evacuated," "[t]he following day, Defendants represented to [Plaintiffs] that the premises was safe"; and (vii) "when [Plaintiffs] returned to the premises, [they] experienced additional symptoms." (Howdershelt Compl. at ¶¶ 11–18; Antos Compl. at ¶¶ 10–17.)

Moreover, Plaintiffs' Complaints do not simply recite the bare elements of negligence as seen in *Stuart*. Rather, the Complaints set forth specific breaches of duties that GM and LGES allegedly owed, including that they: (i) "failed to operate the coating ovens with care"; (ii) "failed to develop, document and implement procedures for control of hazardous chemicals"; (iii) "failed to train its agents, employees, contractors and/or servants and implement appropriate safety procedures"; (iv) "failed to provide appropriate safety measures and equipment including proper ventilation and control interlocks"; and (v) "failed to inspect and failed to warn of latent hazards." (Howdershelt Compl. at ¶¶ 31, 38; Antos Compl. at ¶¶ 29, 36.) Again, Plaintiffs include and point to specific allegations to support their negligence claim.

Here, the exact cause of the release of toxic fumes and allegedly deficient servicing of the ovens, the role of each defendant, and the extent of each defendant's duty or responsibility concerning the incident and the alleged injuries "cannot be definitively established at this stage in the matter." *Bechak*, 2015 WL 8527416, at *2. "[D]iscovery will help expose who will have any actual responsibility." *Shah*, 2024 WL 3226108, at *5. But the specific factual details alleged in the Complaints are "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and are sufficient at this stage in the proceeding. *Bechak*, 2015 WL 8527416, at *2. Accordingly, the Court finds that dismissal of Plaintiffs' negligence claims against GM and LGES is not warranted.

### B.    Employer Intentional Tort Claim Against LEE

The Court next turns to Plaintiffs' employer intentional tort claims against Defendant LEE.

In its Motions, LEE submits that an employer intentional tort claim requires a showing of "specific" or "deliberate intent to injure another." (LEE Howdershelt Motion at PageID #123–24; LEE Antos Motion at PageID #162.) LEE maintains that anything short of an "employer's subjective desire to injure" will not suffice, including an employer that commits a "gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct." (*Id.*) LEE also asserts that a "heightened standard of review" applies to employer intentional tort claims under Ohio law. (LEE Howdershelt Motion at PageID #124–25; LEE Antos Motion at PageID #162–63.) Accordingly, LEE contends that Plaintiffs fail to meet that heightened pleading standard because they cannot show that LEE "specifically desired to injure the employee" or "knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded." (*Id.*) In support of this argument, LEE references Plaintiffs' allegations that LEE permitted Howdershelt and Antos to return to the premises "without understanding" the "identity and nature of the chemical exposure"—which LEE construes as an admission by Plaintiffs that LEE could not have had the requisite knowledge, deliberate intent, and subjective desire to injure Plaintiffs. (*See* LEE Howdershelt Motion at PageID #125–28; LEE Antos Motion at PageID #163–67.)

In their Oppositions, Plaintiffs maintain that they have adequately pled an employer intentional tort claim. (Howdershelt Opposition to LEE at PageID #143–44; Antos Opposition to LEE at PageID #181–82.) Plaintiffs do not contest that a claim under § 2705.01 requires pleading that an employer committed the tortious act "with the intent to injure another or with the belief that the injury was substantially certain to occur," i.e., "with deliberate intent to cause an employer to

24

suffer an injury, disease, a condition or death." (*Id.*)  Instead, Plaintiffs submit that they have "adequately alleged that [LEE] acted intentionally or with knowledge that [LEE]'s conduct was substantially certain to cause injury to Plaintiff." (Howdershelt Opposition to LEE at PageID #144; Antos Opposition to LEE at PageID #182.)  Further, Plaintiffs contend that "deliberat[e] misrepresentation of a toxic substance creates a rebuttable presumption that the misrepresentation was committed with intent to injure," and that LEE "deliberately misrepresented to Plaintiff[s] that the premises was safe after the initial chemical exposure." (Howdershelt Opposition to LEE at PageID #144–45; Antos Opposition to LEE at PageID #182–83.)

In its Replies, LEE reiterates its arguments that it could not have deliberately intended to injure Plaintiffs if it was acting "without understanding the full identity and nature of the chemical exposure," and that such allegations at best plead a claim for negligence or recklessness. (LEE Howdershelt Reply at PageID #198; LEE Antos Reply at PageID #189.)  For similar reasons, LEE asserts that Plaintiffs have failed to plead a deliberate misrepresentation of a toxic or hazardous substance to create a rebuttable presumption of intent to injure. (LEE Howdershelt Reply at PageID #199; LEE Antos Reply at PageID #190.)  LEE also contends that Plaintiffs do not provide sufficient details about the hazardous substance or misrepresentation to satisfy the heightened pleading standard applicable to employer intentional tort claims. (*Id.*)

Section 2745.01 of the Ohio Revised Code reads:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

25

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

Ohio Rev. Code § 2745.01.

According to the Ohio Supreme Court, the Ohio General Assembly, in enacting the instant statute, "intended to limit claims for employer intentional torts to situations in which an employer acts with the 'specific intent' to cause an injury to another." *Houdek v. TyssenKrupp Materials N.A., Inc.*, 983 N.E.2d 1253, 1258 (Ohio 2012). Thus, under section 2745.01 of the Ohio Revised Code, "absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Id.*; *see also Spangler v. Sensory Effects Powder Sys., Inc.*, 2015 WL 1505766, at *3–4 (N.D. Ohio Apr. 1, 2015); *Harris v. Ford Motor Co.*, 2022 WL 7579833, at *3 (N.D. Ohio Oct. 13, 2022) (Barker J.).

To that end, under § 2745.01, "[a]n employee asserting an employer intentional tort claim is subject to a 'heightened standard of review' under a Rule 12(b)(6) motion to dismiss." *O'Connor v. Nationwide Children's Hosp.*, 219 F. Supp. 3d 673, 680 (S.D. Ohio 2016) (quoting *Byrd v. Faber*, 565 N.E.2d 584, 589 (Ohio 1991)); *Harris*, 2022 WL 7579833, at *3. This heightened pleading standard is due to "the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice." *Byrd*, 565 N.E.2d at 589. Ohio's "heightened pleading standard for employer intentional torts is substantive law," and thus, applied by federal

courts sitting in diversity.  *Downey v. Reich Installation Servs., Inc.*, 2009 WL 2922262, at *3 (N.D. Ohio Sept. 8, 2009) (noting that "[t]he heightened pleading standard functions much in the same way as other 'procedural' rules that have been held to be substantive in nature, such as state statute of limitations"); *Harris*, 2022 WL 7579833, at *3 (same).

Accordingly, the Court will analyze Plaintiffs' Complaints under Ohio's heightened pleading standard for alleged intentional torts committed by employers.  A claim of intentional tort against an employer will be dismissed unless the "complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded." *Mitchell v. Lawson Milk Co.*, 532 N.E.2d 753, 756 (Ohio 1988).  Accordingly, the scope of an employer's liability for intentional torts "cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury."  *Redding v. Truck Service, Inc.*, 2023 WL 3995084, at *4 (N.D. Ohio June 14, 2023); *see also Kaminski v. Metal & Wire Prods. Co.*, 927 N.E.2d 1066, 1088 (Ohio 2010).

The Court finds that Plaintiffs have failed to allege a claim for employer intentional tort under § 2745.01.  As Plaintiffs admit in their Oppositions, their Complaints allege that LEE allowed Howdershelt and Antos to enter back into the battery plant "without understanding the full identity and nature of the chemical exposure."  (Howdershelt Compl. at ¶ 42; Antos Compl. at ¶ 40.)  This allegation alone makes clear that LEE could not have "specifically desired to injure" Plaintiffs or "knew that injury to [Plaintiffs] was certain or substantially certain … and despite this knowledge,

still proceeded," because LEE did not have sufficient knowledge regarding the identity and nature of the chemical exposure. *Mitchell*, 532 N.E.2d at 756. LEE correctly notes that "[w]ithout such knowledge, it cannot even be said that [LEE] knew that there was a risk of [Plaintiffs] being injured[,] let alone that [LEE] deliberately intended to injured Plaintiffs." (LEE Howdershelt Reply at PageID #198; LEE Antos Reply at PageID #189.) Accordingly, Plaintiffs fail to state a plausible claim for relief under § 2745.01(A).

Also, Plaintiffs do not sufficiently allege a claim under § 2745.01(C). Under § 2745.01(C), the "deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the … misrepresentation was committed with intent to injure another." The term "deliberate" under § 2745.01(C) means "characterized by or resulting from careful and thorough consideration-a deliberate decision." *Forwerck v. Principle Business Ents., Inc.*, 2011 WL 346431, at *3 (6th Dist. Feb. 4, 2011). It is not enough that an employer merely made a misrepresentation—rather, that misrepresentation must have been deliberate. *See* § 2745.01(C).

In this matter, Plaintiffs admit that any alleged misrepresentation by LEE that the "premises was safe" was made "without understanding the full identity and nature of the chemical exposure." (Howdershelt Compl. at ¶ 42; Antos Compl. at ¶ 40.) If LEE did not understand the full identity and nature of the chemical exposure, it could not have made a "careful and thorough consideration-a deliberate decision" to misrepresent the safety of the premises. *Forwerck*, 2011 WL 346431, at *3. Plaintiffs do not allege that LEE *knew* that it was without understanding of the full identity and nature of the chemical exposure, and despite *knowing* that it could not confirm whether the premises was safe, still deliberately made the misrepresentation. Instead, Plaintiffs simply allege that "Defendants represented to [Plaintiffs] that the premises was safe," and that LEE's "failure in allowing [Plaintiffs],

28

their employee[s], to enter back onto the premises, without understanding the full identity and nature of the chemical exposure that [Plaintiffs were] exposed to … constitutes a deliberate misrepresentation of a hazardous substance." (Howdershelt Compl. at ¶¶ 17, 42, 44; Antos Compl. at ¶¶ 16, 40, 42.)

In other words, LEE did not understand the full identity and nature of the chemical exposure, and as a result, initially represented to Plaintiffs that the "premises was safe" based on its incomplete understanding at the time.  No allegations in Plaintiffs' Complaints indicate that such a misrepresentation, even if later found to be incorrect, was made *deliberately*—aside from Plaintiffs' conclusory allegation that this "constitutes a deliberate misrepresentation of a hazardous substance." (Howdershelt Compl. at ¶ 44; Antos Compl. at ¶ 42.)  There are no allegations that LEE made a "careful and thorough consideration-a deliberate decision" to make this misrepresentation.  *Forwerck*, 2011 WL 346431, at *3.  Rather, just the opposite—the Complaints allege that without a clear understanding of the nature of the hazards, LEE hastily reached the conclusion that the "premises was safe" and represented this to Plaintiffs.  While this representation may have been made negligently, or even recklessly, Plaintiffs fail to plead allegations demonstrating that LEE had the requisite knowledge to have acted deliberately.  Particularly considering that an "employer intentional tort claim is subject to a 'heightened standard of review' under a Rule 12(b)(6) motion to dismiss," the Court finds that Plaintiffs have failed to plead allegations demonstrating that any alleged misrepresentation was made *deliberately* as required under § 2745.01(C).  *O'Connor*, 219 F. Supp. 3d at 680 (quoting *Byrd*, 565 N.E.2d at 589).

29

Accordingly, for the foregoing reasons, the Court dismisses Plaintiffs' employer intentional tort claims against LEE.[16]

### C.    Loss of Consortium Claim against LEE

Finally, the Court turns to Plaintiff Devonna R. Howdershelt's loss of consortium claim against LEE.  Neither Plaintiff Devonna R. Howdershelt nor LEE dispute that the loss of consortium claim is wholly dependent on whether the claim for employer intentional tort claim survives.  (*See* LEE Howdershelt Motion at PageID #129 ("Loss of consortium claims are derivative claims which are dependent on the existence of the primary claim."); Howdershelt Opposition to LEE at PageID #145 ("As a derivative claim, loss of consortium depends on the merits of the main action.").)  This is consistent with Ohio case law.  *See Keller v. Foster Wheel Energy Corp.*, 837 N.E.2d 859, 863–64 (10th Dist. 2005) ("Generally, a loss of consortium claim is a derivative claim dependent upon the existence of a primary claim, and it can be maintained only so long as the primary claim continues."); *McCarthy v. Lee*, 2022 WL 1258229, at *2 (10th Dist. Apr. 28, 2022) (same); *Mender v. Chauncey*, 41 N.E.3d 1289, 1301 (4th Dist. 2015) (similar).

Because Plaintiffs have failed to plead a viable employer intentional tort claim—the only claim asserted against LEE—there is no underlying claim to support Plaintiff Devonna R. Howdershelt's loss of consortium claim against LEE.  Accordingly, the Court hereby dismisses the loss of consortium claim against LEE.[17]

---

[16] The Court finds it unnecessary to address the parties' remaining arguments on this claim.

[17] Plaintiff Devonna R. Howdershelt asserted loss of consortium claims against "All Defendants."  (Howdershelt Compl. at ¶¶ 55–56.)  However, only LEE moved to dismiss this claim—GM and LGES did not.  Moreover, Plaintiffs' negligence claims against GM and LGES are not subject to dismissal.  *See supra* Section IV.A.  Accordingly, the loss of consortium claims against GM and LGES are not subject to dismissal.

## V.        Conclusion

For the reasons set forth above, the Court **DENIES** the GM/LGES Howdershelt Motion and GM/LGES Antos Motion.   The Court **GRANTS** the LEE Howdershelt Motion and LEE Antos Motion.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date:  April 8, 2025